UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RICHARD ANTHONY F.,[1] | |
| Plaintiff, | Case No. 1:22-cv-00420-DKG |
| v. | **MEMORANDUM DECISION AND ORDER** |
| MARTIN J. O'MALLEY, Commissioner of Social Security Administration,[2] | |
| Defendant. | |

**INTRODUCTION**

Plaintiff filed a Complaint for judicial review of the Commissioner's denial of his application for disability and disability insurance benefits. (Dkt. 1). Having reviewed the Complaint, the parties' memoranda, and the administrative record (AR), the Court will affirm the decision of the Commissioner for the reasons set forth below.

**BACKGROUND**

On January 3, 2020, Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning on December 17,

---

[1] Plaintiff's name is partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Martin J. O'Malley became the Commissioner of Social Security Administration on December 20, 2023. Fed. R. Civ. P. 25(d).

**MEMORANDUM DECISION AND ORDER - 1**

2019. (AR 13). Plaintiff's application was denied initially and on reconsideration. A hearing was conducted on January 25, 2022, before Administrative Law Judge (ALJ) David Willis. (AR 13).[3] Plaintiff agreed to amend the alleged disability onset date to September 4, 2020, and confirmed such agreement at the beginning of the hearing. (AR 13).

After considering testimony from Plaintiff and a vocational expert, the ALJ issued a written decision on May 4, 2022, finding Plaintiff not disabled. (AR 13-32). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision final. *See* 42 U.S.C. § 405(h). Plaintiff timely filed this action seeking judicial review of the ALJ's decision. (Dkt. 1). The Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

On the amended alleged disability onset date, Plaintiff was fifty-two years of age. Plaintiff has at least a high school education with past relevant work experience as a test and inspection supervisor and an ordnance supervisor. (AR 30). Plaintiff claims disability due to physical and mental impairments including disc syndrome problems, bulging discs at L3 and L4, sciatica nerve problems, right shoulder problem, post-traumatic stress disorder ("PTSD"), traumatic brain injury ("TBI"), hearing loss, and migraines. (AR 105, 125).

### THE ALJ'S DECISION

Disability is the "inability to engage in any substantial gainful activity by reason

---

[3] The hearing was conducted with the consent of the Plaintiff via online video due to the Coronavirus Pandemic of 2019. (AR 13).

of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520; *Lounsbury v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

Here, at step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the amended alleged onset date. (AR 15). At step two, the ALJ determined Plaintiff suffers from the following medically determinable severe impairment: degenerative disc disease of the lumbar spine. (AR 15). The ALJ found Plaintiff's degenerative disc disease of the cervical spine, diabetes mellitus, hyperlipidemia, kidney stones, right shoulder injury, gastroesophageal reflux disease, bronchitis, hearing loss, migraines, and anxiety/PTSD impairments to be non-severe. (AR 16-21).

At step three, the ALJ determined that, through the date last insured, Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (AR 24). The ALJ next found Plaintiff retained the Residual Functional Capacity (RFC) for light work with the following conditions:

> [Claimant can] lift/carry/push/pull 20 pounds occasionally, and 10 pounds frequently, stand and/or walk for six hours in an 8-hour workday, and sit for six hours in an 8-hour workday. The claimant can occasionally climb ramps or stairs, but can never climb ladders, ropes, or scaffolds. The claimant can frequently balance and kneel. He can occasionally stoop, crouch, or crawl.

(AR 25).

**MEMORANDUM DECISION AND ORDER - 3**

At step four, the ALJ found Plaintiff is capable of performing past relevant work as a test and inspection supervisor, and ordnance supervisor as generally performed in the national economy, as this work does not require the performance of work-related activities precluded by Plaintiff's RFC. (AR 30). At step five, the ALJ determined that in addition to Plaintiff's ability to perform his past relevant work, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform considering Plaintiff's age, education, work experience, and RFC, such as copy machine operator, office helper, and clerical checker. (AR 30-31). Therefore, the ALJ found Plaintiff not disabled. (AR 32).

## ISSUES FOR REVIEW

1.    Whether the ALJ properly considered Plaintiff's subjective symptom allegations.

2.    Whether the ALJ properly evaluated the medical opinion evidence.

3.    Whether the ALJ properly considered the lay witness statements.

4.    Whether the ALJ properly determined Plaintiff's Residual Functional Capacity.

## STANDARD OF REVIEW

The Court will uphold an ALJ's decision unless: (1) the decision is based on legal error, or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This requires "more than a mere scintilla" of evidence. *Id*.

The Court must consider the administrative record as a whole. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). It must weigh both the evidence that supports, and the evidence that does not support, the ALJ's conclusion. *Id.*

If the ALJ's decision is based on a rational interpretation of conflicting evidence, the Court will uphold the ALJ's finding. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008). It is unnecessary for the ALJ to "discuss all evidence presented." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must, however, explain why "significant probative evidence has been rejected." *Id.*

## DISCUSSION

### 1.    Subjective Symptom Allegations

Plaintiff contends that the ALJ erred by failing to provide clear and convincing reasons for rejecting Plaintiff's symptom testimony, and therefore, the ALJ's findings were unsupported by the record. (Dkt. 19 at 7-9). Where the record contains objective medical evidence "establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains" and there has not been an affirmative finding of malingering, the ALJ is required to provide "specific, clear and convincing reasons for" rejecting Plaintiff's subjective symptom testimony. *Garrison*, 759 F.3d at 1014-15 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)); *Ferguson v. O'Malley*, 2024 U.S. App. LEXIS 6125, at *7 (9th Cir. 2024). The clear and convincing standard does not require this Court to be convinced, "but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53

F.4th 489, 499 (9th Cir. 2022). Plaintiff is correct that "general findings are insufficient" and that "the ALJ must identify what testimony is not credible and what evidence undermined the claimant's complaints" to properly exclude symptom testimony. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).

Here, the ALJ first summarized Plaintiff's symptom testimony, in that he left work in 2020 due to back pain, migraines, and memory loss. (AR 25). When Plaintiff was working part time at home, he required a sit/stand desk and an ergonomic chair. He further testified that he had been receiving steroid injections in his back, but they were working less and less. He stated he has been using a cane for the last two years, and although it was not prescribed, he finds it keeps him from falling. Plaintiff alleged he could stand for 10 minutes before he had to sit for 10 minutes, estimated he could walk to his mailbox, about four houses down, and that he could sit for 10 to 15 minutes at a time. (AR 25-26). Ultimately, the ALJ found that Plaintiff's impairments could reasonably be expected to cause the alleged symptoms, but his statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. (AR 26).

After a thorough review of the entire record, the Court finds that the ALJ provided specific, clear, and convincing reasons supported by substantial evidence for discrediting Plaintiff's symptom testimony. *Bray v. Comm'r, Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) ("In reaching a credibility determination, an ALJ may weigh consistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors.") Though Plaintiff may advocate for a more favorable

**MEMORANDUM DECISION AND ORDER - 6**

reading of the evidence, the Court cannot second guess the ALJ's reasonable interpretation of the record.

The ALJ discussed the entirety of Plaintiff's medical records regarding his low back pain and found that his back pain has been reasonably well managed through conservative modalities, including medication, exercise, and injection. (AR 28). Plaintiff argues that epidural steroid injections have not been considered a conservative treatment. (Dkt. 19 at 8); *Garrison*, 759 F.3d at 1023 n. 20. While steroid injections may not generally be considered conservative treatment, the ALJ's assertion that Plaintiff's back pain had been reasonably well managed was based on injections, as well medication and exercise. (AR 28). The Court finds the ALJ's reasoning supported by substantial evidence in the record.

Plaintiff's low back pain symptoms were noted to be improving with physical therapy (AR 804), at times when using medication and the TENS unit he had no pain (AR 821-22), and Plaintiff had reduced symptoms when he was more active, less sedentary, and when he was compliant with lifting/activity restrictions. (AR 903-904). *See* 20 C.F.R. § 416.929(c)(3)(iv)-(v) ("An ALJ may discount a claimant's subjective complaints if the record shows effective treatment.") More broadly, "evidence of medical treatment successfully relieving symptoms can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017). The ALJ provided a thorough consideration of Plaintiff's degenerative disc disease of the lumbar spine by imposing limitations on strenuous physical activity with some postural limitations, but ultimately

concluded that the evidence did not support additional limitations beyond those provided for in Plaintiff's RFC. (AR 28).

The ALJ further found that Plaintiff's allegations of disabling pain severely limiting his ability to perform even light work was inconsistent with objective medical evidence in the record, and therefore did not support the severity of Plaintiff's symptom allegations. The ALJ noted that clinical findings revealed Plaintiff had reasonably good range of motion without significant neurologic deficits, and that there is no consistent evidence of nerve root impingement or significant spinal stenosis. (AR 28). *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (holding that inconsistencies between subjective complaints and objective medical evidence is a clear and convincing reason for discounting claimant's testimony). The ALJ also pointed to the fact that there is no indication that surgery was warranted in Plaintiff's case, and he had not required emergency room care or inpatient hospital stay for acute exacerbations of his low back pain. (AR 28); *Agatucci v. Berryhill*, 721 F. App'x 614, 618 (9th Cir. 2017) ("We uphold [the] ALJ's rational interpretation that, because [plaintiff's] condition did not necessitate surgery, her symptoms were not as debilitating as she alleged."). Substantial evidence in the record supports the ALJ's conclusion, even if other reasonable explanations outside of the ALJ's conclusion exist. Therefore, the Court finds this was a clear and convincing reason to discount Plaintiff's testimony. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

Moreover, the ALJ found Plaintiff's claimed symptoms were inconsistent with his reports to his medical providers. (AR 28-29). *See Molina v. Astrue*, 674 F.3d 1104, 1112-

13 (9th Cir. 2012); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007). Although

Plaintiff claims his impairments cause debilitating pain, he told providers in November

2019 after a steroid injection that he felt much better and was able to lift heavy boxes and

move things around his workplace.[4] (AR 601). He also stated later that month that he had

aggravated his back due to his own stubbornness, his long commute to work, lifting

heavy loads, and "generally doing everything I shouldn't have". (AR 641). In March

2020, he described that a typical day for him includes housework and playing with his

dogs. (AR 780). In September 2020, Plaintiff reported he was wood working a lot and not

limited by pain. (AR 833). In October 2020, Plaintiff aggravated his symptoms mopping,

but noted to his provider that the aggravated symptoms were going away. (AR 889).

Additionally, in November 2020, Plaintiff stated he did "something stupid" and

aggravated his back further by moving three one-hundred-pound roofing materials from

his roof. (AR 816-17). However, by December 2020, Plaintiff told providers he had been

working in the garage and was feeling good, and that this was the "best he has felt in a

long time." (AR 812). The Court finds these records discussed in the decision support the

ALJ's evaluation of Plaintiff's statements. Plaintiff's ability to engage in these activities

and reports describing effective management of his back pain undermine his statements

---

[4] Although Plaintiff argues that some records cited to by the ALJ are irrelevant to the ALJ's ultimate disability determination because they are from prior to his amended onset date of September 2020 (Dkt. 19 at 10), the ALJ has a statutory duty to develop the record for one year prior to Plaintiff's alleged onset date. 42 U.S.C. § 423(d)(5)(B); *see also Kimmins v. Colvin*, 2013 U.S. Dist. LEXIS 144986, at *29 (N.D. Cal. Oct. 4, 2013) ("[T]he regulations explicitly require that the ALJ consider 'all relevant evidence to obtain a longitudinal picture of [a claimant's] overall degree of functional limitation. . .'") (internal citation omitted).

about his physical symptoms and limitations. *Molina*, 647 F.3d at 1112-13 (an ALJ may discount a claimant's symptom testimony when it is inconsistent with the claimant's general activity level).

Plaintiff argues that the records discussed above demonstrate instead that Plaintiff's activities increased his symptoms and therefore his level of functioning since the onset date has been significantly impaired. (Dkt. 19 at 10-11). However, Plaintiff's ability to engage in certain activities as demonstrated by his statements to providers, even those that aggravate his symptoms, was found by the ALJ to be inconsistent with his testimony of disabling symptoms. *See* 20 C.F.R. § 404.1529(c)(3); *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). The ALJ specifically noted that Plaintiff participated in activities that further aggravated his symptoms, which is shown in his discussion of Plaintiff's symptom statements and was ultimately taken into consideration as evidenced by the restrictions in the RFC determination. (AR 25, 28). The ALJ acknowledged that Plaintiff's impairments do cause some limitation as demonstrated by his statements to his providers, but the evidence in the record provides clear and convincing reasons for the ALJ's rejection of Plaintiff's subjective symptom testimony. *Smartt*, 53 F.4th at 499 ("Even if the claimant experiences some difficulty or pain, her [] activities may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.") (citation omitted). It was reasonable for the ALJ to conclude that these statements to providers regarding Plaintiff's symptoms and activities were inconsistent with his claims of debilitating pain precluding his ability to work. For

**MEMORANDUM DECISION AND ORDER - 10**

these reasons, the Court finds this was a specific, clear and convincing reason for the ALJ to reject Plaintiff's subjective symptom statements.

Plaintiff also contends that the ALJ erred in his discussion of Plaintiff's activities in his functional reports as evidence to support discrediting his subjective symptom testimony. (Dkt. 19 at 9-10). The ALJ summarized Plaintiff's statements in his functional reports from March 2020, June 2020, and January 2021. (AR 28, 306-13, 337-44, 361-68). Plaintiff asserts that the ALJ erred by failing to explain how these activities contradicted his other testimony or how the activities met the threshold for transferable skills. (Dkt. 19 at 9). Plaintiff further contends the ALJ's explanation of his 2021 functional report was not put into context with the remainder of his testimony. (Dkt. 19 at 9-10). "Inconsistencies between a claimant's testimony and the claimant's reported activities provide a valid reason for an adverse credibility determination." *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (citation omitted). However, "an ALJ's mere recitation of a claimant's activities is insufficient to support rejection of the claimant's testimony as a matter of law." *Martha S. v. Comm'r, Soc. Sec. Admin.*, 2023 WL 4989911, at * 5 (D. Or. Oct. 27, 2021).

Here, the Court finds that the ALJ's generalized summary of Plaintiff's daily activities from his functional reports fails to provide the requisite explanation of "what symptom testimony [was] not credible and what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284 (citing *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)). The ALJ's discussion of the activities listed in Plaintiff's functional reports differs from the evaluation of his activity level statements to providers as discussed

**MEMORANDUM DECISION AND ORDER - 11**

previously, because here, the ALJ merely listed the activities and failed to link them in a meaningful way to Plaintiff's testimony. *Burrell v. Colvin*, 775, F.3d 1133, 1138 (9th Cir. 2014). Additionally, the ALJ improperly relied on evidence from the 2021 functional statement because the full context of Plaintiff's statements about his daily activities reflected that he was unable to perform some of the activities mentioned by the ALJ. (AR 28); *see Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (finding the ALJ improperly relied on evidence of claimant's daily activities for adverse credibility determination where claimant stated she performed only limited activities, sometimes with help). Although Plaintiff's 2021 functional report listed that he does household chores and yardwork, when asked how often he does these activities, Plaintiff stated he does not do them, and that he hires someone to complete yardwork and household repairs now. (AR 363). Further, Plaintiff listed his numerous hobbies, but went on to state that his ability to participate in them is now limited or very limited due to his symptoms. (AR 365). Therefore, the Court finds the ALJ's reliance on Plaintiff's activities of daily living from his functional reports was not a clear and convincing reason for the ALJ to reject Plaintiff's symptom testimony.

Nevertheless, because the ALJ provided numerous other valid reasons to reject Plaintiff's testimony that are supported by substantial evidence, any error in the ALJ's consideration of Plaintiff's activities of daily living is deemed harmless. *See Carmickle*, 533 F.3d at 1162 (holding inclusion of erroneous reasons among other reasons to discount Plaintiff's credibility does not negate the validity of the overall credibility determination where an ALJ provides other reasons supported by substantial evidence).

Where an ALJ's interpretation of Plaintiff's symptom testimony is supported by substantial evidence available in the record, the reviewing court should not relitigate it, even if other reasonable interpretations exist. *Rollins*, 261 F.3d at 857. Here, although Plaintiff offers an alternative interpretation of the objective evidence in the record, the ALJ's interpretation is rational and well-supported by the evidence mentioned above. *Burch v. Barnhart*, 400 F.3D 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."). Therefore, the Court finds the ALJ's evaluation of Plaintiff's subjective symptom testimony was supported by substantial evidence and free from harmful error.

## 2.     Medical Opinion Evidence

Plaintiff next argues that the ALJ erred in his evaluations of the opinions of the state agency consultants, Thomas Coolidge, M.D. and Michael Spackman, M.D. Also, Plaintiff contends that the ALJ failed to properly evaluate the disability report of Kurt Reintjes, M.D., because the ALJ failed to make a persuasiveness finding as to his opinion. (Dkt. 12 at 19). Defendant maintains that the ALJ's evaluations of the medical opinions in the record were supported by substantial evidence, and specifically, the ALJ was not required to make a persuasiveness finding as to Reintjes' report because he did not provide a medical opinion. (Dkt. 24 at 13).

### A.     Legal Standards

Under the regulations governing an ALJ's evaluation of medical opinion evidence for claims filed on or after March 27, 2017, such as here, the ALJ is not required to give deference to any medical opinion, including treating source opinions. 20 C.F.R. §

**MEMORANDUM DECISION AND ORDER - 13**

404.1520c; *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (ALJs no longer need to "provide 'specific and legitimate reasons' for rejecting a treating or examining doctor's opinion."). Instead, the ALJ evaluates the persuasiveness of the opinions based on several factors. 20 C.F.R. § 404.1520c(a). These are: supportability, consistency, relationship to the claimant, specialization, and other factors. 20 C.F.R. § 404.1520c(c)(1)-(5). The most important factors in the evaluation process are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2).

"Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant ... objective medical evidence.'" *Woods*, 32 F.4th at 791-792 (quoting 20 C.F.R. § 404.1520 c(c)(1). "Consistency means the extent to which a medical opinion is 'consistent ... with the evidence from other medical sources and nonmedical sources in the claim.'" *Id*. (quoting 20 C.F.R. § 404.1520c(c)(2).

Under this framework, the ALJ is required to articulate how persuasive they find the evidence and explain how the supportability and consistency factors were considered. 20 C.F.R. § 404.1520c(b)(2). The ALJ may, but is not required to, explain how the other persuasive factors in paragraphs (c)(3) through (c)(5) were considered. 20 C.F.R. § 404.1520c(b)(2). However, when two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same," the ALJ is required to explain how the other factors were considered. 20 C.F.R. § 404.1520c(b)(3). The ALJ's persuasiveness determination under the revised regulations must be supported by substantial evidence. *See Woods*, 32 F.4th at 787 ("Now, an ALJ's decision, including the decision to discredit

any medical opinion, must simply be supported by substantial evidence.").

With the above considerations in mind, the Court now turns to the ALJ's evaluation of the medical opinions.

**B.      Dr. Coolidge and Dr. Spackman's Opinions**

Medical consultant Coolidge provided a physical RFC assessment following a review of Plaintiff's allegations and the available medical records. (AR 104-23). Coolidge evaluated Plaintiff's alleged symptoms and found his statements to be partially consistent with his activities of daily living and statements to providers. (AR 116). Coolidge specifically cited to Reintjes' report where it was noted that Plaintiff had an unremarkable gait when entering the exam room, but a marked antalgic gate when exiting. (AR 115-16). Coolidge opined that Plaintiff could lift 20 pounds occasionally, 10 pounds frequently, stand and/or walk about 6 hours in an 8-hour workday, and sit for about 6 hours in an 8-hour workday. (AR 117). Coolidge provided an explanation for Plaintiff's exertional limitations in that due to his low back pain with radicular complaints, he should be limited to light work activity with breaks in standing or sitting as needed for pain. (AR 117-18). Coolidge further found Plaintiff could occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl, but never climb ladders, ropes, or scaffolds due to his low back pain. (AR 118). Coolidge provided additional explanation of Plaintiff's medical records and activities of daily living to support his opinion that Plaintiff's RFC is assessed at light work activity. (AR 119-20).

Additionally, medical consultant Spackman provided a physical RFC assessment of Plaintiff on reconsideration of his disability claim. (AR 125-32). Initially, Spackman

found that the objective evidence on reconsideration continued to support the opinion that

Plaintiff has the capacity for at least light work duty with regular breaks for postural

changes. (AR 127). Spackman provided explanation for his opinion in that he considered

Plaintiff's subjective complaints and the medical evidence in the record, including the

more recent 2021 MRI findings. (AR 127-28). Spackman found Plaintiff's symptom

statements to be partially consistent, and provided further explanation in that Reintjes'

report noted Plaintiff had an unremarkable gait when entering the exam room, but a

markedly antalgic gait while exiting, and that Plaintiff's one-point cane was used with a

variant necessity. (AR 129). Spackman opined that Plaintiff could occasionally lift 20

pounds, frequently lift 10 pounds, stand and/or walk about 6 hours in an 8-hour workday,

sit for about 6-hours in an 8-hour workday, could frequently balance and kneel, could

occasionally climb ramps or stairs, stoop, crouch, or crawl, and never climb ladders,

ropes, or scaffolds. (AR 130). Spackman also found that the prior findings of Coolidge

were consistent with the medical evidence he considered in his reconsideration

determination. (AR 130).

### C.    The ALJ's Decision

The ALJ evaluated the opinions of Coolidge and Spackman together, and found as

follows:

> The undersigned has carefully considered the opinions of the State Agency
> medical consultants, Thomas T. Coolidge, M.D. and Michael Spackman,
> M.D. (8A/14-17; 10A/5-7). The State Agency medical consultants are non-
> treating, non-examining medical sources. However, their opinions are
> based upon a thorough review of the available medical record, and a
> comprehensive understanding of agency rules and regulations. For the most
> part, the undersigned finds these opinions are internally consistent and well

supported by a reasonable explanation and the available evidence, indicating limited objective findings of degenerative disc disease of the lumbar spine on clinical exam and imaging, without significant neurologic deficits (3F/119, 131-132; 7F/4-6, 17-21, 29, 34-38, 57-60, 109-112, 117-121; 8F; 9F/2-4; 13F/52, 60). Further, the opinions are consistent with the claimant's activities of daily living, which include the ability to take care of pets, prepare meals, perform housework such as cleaning the laundry, washing dishes, and mopping floors, engage in general housecleaning, perform yardwork including mowing the lawn and pulling weeds, perform household repairs, drive a car, shop in stores for food and household items, handle money, engage in hobbies and interests including woodworking, making 3D cutting boards, and pen making, engage in computer gaming and photography, and engage in texting and visiting friends once a week over coffee or lunch (5E; 11E; 17E). As such, the undersigned finds these opinions are persuasive.

(AR 29).

### D.   Analysis

Plaintiff argues the ALJ failed to properly evaluate the persuasiveness factors and his decision is not supported by the record.

First, Plaintiff contends that the ALJ's supportability finding is insufficient and therefore not supported by substantial evidence in the record. Specifically, he argues that the opinions could not have been based on a thorough review of the available record because neither consultant referenced Plaintiff's most recent 2021 MRI. (Dkt. 19 at 13). This is incorrect. Spackman's opinion expressly referenced the 2021 MRI, which revealed a small cystic-appearing structure proximal right L3-L4 foramen superiorly, question perineural cyst, impingement on the right L3 exiting nerve root not excluded, L4-L5 disc degenerative disease with diffuse posterior bulge extending through the foramina annular fissure, and slight caudal migration, and prior right-sided L4-L5 hemilaminectomy. (AR 127, 943). Thus, Spackman considered the 2021 MRI, in

reaching his conclusion that Plaintiff was capable of performing work at the light exertional level. (AR 127).

Indeed, the Court finds the ALJ properly addressed the supportability factor. The ALJ found the consultants' opinions to be supported by the available evidence indicating limited objective findings of degenerative disc disease of the lumbar spine on clinical exam and imaging, without significant neurological deficits. (AR 29, 559, 571-72, 788-90, 801-805, 813, 818-22, 841-44, 893-96, 901-04, 936-38, 941-43, 1074, 1082). In making this finding, the ALJ cited to specific evidence in the record at length, stated his interpretation thereof, and made a finding that the opinions were well supported. (AR 29); *see* 20 C.F.R. § 404.1520c(c)(2).

Although Plaintiff cites to other evidence in asserting the ALJ erred in finding Coolidge and Spackman's opinions persuasive, the ALJ identified numerous medical records that support the consultants' opinions that Plaintiff is capable of work at the light exertional level. (AR 29). For instance, the ALJ cited to records noting that Plaintiff had good and bad days, his symptoms were better when he was active, and were improving with physical therapy. (AR 804).  The records also included that Plaintiff had been working in his garage and feeling good, that "this is the best he has felt in a long time," and that he presented to physical therapy with drastically improved low back pain, although Plaintiff noted that he had not been performing aggravating household activities. (AR 812-13). Other records pointed to by the ALJ stated that at times when Plaintiff was using medication and the TENS unit he had no pain, noticed drastic improvement with the TENS unit using it multiple times a day, and he was able to work at his work bench

now that it is at a taller height. (AR 821-22). The records cited also included that

Plaintiff's back pain had improved, he was able to exercise more frequently, and was able

to walk on toes and heels without difficulty, with intact sensation and full strength in both

legs. (AR 893-95). Further, Plaintiff attributed his reduction in symptoms to being less

sedentary and noted that in the past he had not been compliant with prolonged sitting and

lifting heavy objects, but now that he was compliant, he was seeing positive results, and

he had been wood-working a lot in his garage not limited by pain, noting that his

medication has been helping his symptoms. (AR 903-04). The ALJ further cited to

Reintjes' disability report, in which the provider noted Plaintiff used a cane with a variant

necessity, likely unnecessary for daily needs, and had a markedly antalgic gate when

leaving the exam room but an unremarkable gait when entering. (AR 983). Finally, the

ALJ cited to records stating that Plaintiff had normal motor strength, moved all

extremities well, and normal gait and posture. (AR 1074).

   Here, the ALJ thoroughly supported his conclusion by citing to numerous portions

of the record, which support a finding that the consultants' opinions are sufficiently

supported. (AR 29); *Ghanim*, 763 F.3d at 1163 ("When evidence reasonably supports

either confirming or reversing the ALJ's decision, we may not substitute our judgment

for that of the ALJ.") (citation omitted). Plaintiff argues that the records cited to by the

ALJ provide evidence of Plaintiff's ongoing back pain. (Dkt. 27 at 6). However, the ALJ

did not deny that Plaintiff's impairments cause pain that requires activity level

restrictions, which is evidenced by both consultants and the ALJ finding that Plaintiff has

the ability to perform light work with additional limitations. Plaintiff may assert an

alternative interpretation of the medical evidence, but he does not show that the ALJ's interpretation was error. *Molina*, 674 F.3d at 111. The Court finds that the ALJ considered the supportability factor as required by the regulations – as evidenced by the ALJ's finding that both opinions were well supported by a reasonable explanation and were based on a thorough review of the available medical records. (AR 29).

Second, Plaintiff contends the ALJ's finding that the opinions were consistent with Plaintiff's activities of daily living is unsupported by the record. (Dkt. 19 at 9-10). This argument raises the same issues as those found in the ALJ's evaluation of Plaintiff's daily activities related to his subjective symptom testimony. (AR 28-29). Here, as discussed previously, the Court finds the ALJ's discussion of the consistency factor is not sufficient. Again, the ALJ merely summarized Plaintiff's daily activities from his functional reports without further explanation, and his evaluation of the 2021 report was without proper context. While the ALJ's multiple discussions regarding Plaintiff's daily activities offers some indication of possible grounds supporting the ALJ's decision, the Court may not speculate as to the ALJ's reasoning. *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) ("[A] reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection" of certain evidence.). Where, as here, the decision offers only a generalized conclusion and lacked specificity as to which of Plaintiff's daily activities is inconsistent with aspects of both consultants' opinions, the Court finds "the ALJ failed to build a logical bridge between the evidence and [his] conclusion." *Harrison v. Saul*, 2019 U.S. Dist. LEXIS 161078, at *19 (D. Idaho Sept. 16, 2019).

However, the Court finds the error in the ALJ's consistency finding was harmless

in light of the ALJ's adequate supportability finding. *See Woods*, 32 F.4th at 793 n.4. The ALJ found there was sufficient support within Coolidge and Spackman's opinions, and because that finding was supported by substantial evidence in the record, the Court will not disturb the ALJ's assessment of the opinions. For these reasons, the Court finds the ALJ's supportability finding is supported by substantial evidence in the record, and that any error in the ALJ's consistency finding was harmless. *Woods*, 32 F.4th at 792-93 n.4. The Court further finds that substantial evidence supports the ALJ's conclusion finding Coolidge and Spackman's opinions were persuasive.

### E.      Reintjes' Disability Report

Plaintiff argues the ALJ erred by failing to articulate how persuasive he found Reintjes' report. (Dkt. 19 at 12). Defendant contends that Reintjes did not provide a medical opinion that required the ALJ to articulate a persuasiveness finding. (Dkt. 24 at 15).

The new regulations define a medical opinion as a "statement from a medical source about what [Plaintiff] can still do despite [his] impairment(s) and whether [he] ha[s] one or more impairment-related limitations or restrictions." 20 C.F.R. § 404.1513(a)(2). A medical opinion relating to physical impairments should assess Plaintiff's "ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions." *Id*. § 404.1513(a)(2)(i). The ALJ is not expressly required to evaluate "objective medical evidence" or "other medical evidence" under the persuasiveness factors in 20 C.F.R. § 404.1520c. Rather, "judgments about 'the nature and severity of [Plaintiff's]

**MEMORANDUM DECISION AND ORDER - 21**

impairments, [] medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis' are all considered 'other medical evidence' under the regulations, not medical opinions, because they do not provide perspectives about [Plaintiff's] functional limitations and abilities." *Nancy May J. v. Kijakazi*, 2022 U.S. Dist. LEXIS 43035, at *11 (D. Idaho Mar. 8, 2022) (quoting 20 C.F.R. § 404.1513(a)(3).

Reintjes conducted an internal medicine examination of Plaintiff on February 25, 2021. Reintjes' findings were submitted in the form of a disability report, which found Plaintiff was in no acute distress, had full range of motion in his neck, and no pain, tenderness, or spasm was appreciated during his spine examination. (AR 937-38). Further, Reintjes noted Plaintiff's cane was used with a variant necessity and was not likely necessary for daily needs. (AR 938). Reintjes opined that Plaintiff was able to sit and stand without difficulty and was mentioned to have an unremarkable gait when entering the exam room and a markedly antalgic gait when leaving. (AR 938).

Reintjes' finding that Plaintiff is "able to sit up and stand up without difficulty" addresses his ability to perform physical demands of work activities, and therefore qualifies as a medical opinion under the regulations. (AR 938); 20 C.F.R. § 404.1513(a)(2). However, Plaintiff does not explain how the ALJ conducting a persuasiveness finding of Reintjes' report would change the ultimate disability finding. Regardless of whether the ALJ was required to make a persuasiveness finding as to Reintjes' report, after a thorough review of the report in question, any error here would be harmless. The Court does not find the report to be favorable to Plaintiff's position, and he makes no compelling argument to the contrary. (Dkt. 19 at 12, Dkt. 27 at 8). The

**MEMORANDUM DECISION AND ORDER - 22**

ALJ's persuasiveness finding as to Reintjes' report would not have changed the outcome of the disability determination, therefore any error is harmless. *See Molina*, 674 F.3d at 1117 (error harmless if "inconsequential to the ultimate disability determination").

### 3.    Lay Witness Statements

Plaintiff argues the ALJ improperly rejected the nonmedical source statements without providing germane reasons for doing so. (Dkt. 19 at 15). Defendant argues the ALJ was not required to articulate how he considered the nonmedical source evidence following the 2017 revision of the Regulations. (Dkt. 24 at 15-16). In the alternative, Defendant contends that if the Court finds the ALJ should have addressed the nonmedical source statements, the ALJ's failure to do so was harmless because the evidence reiterated Plaintiff's subjective symptom allegations which the ALJ properly rejected. (Dkt. 19 at 16).

This area of law in the Ninth Circuit remains unsettled. The 2017 Regulations updated the language regarding how ALJs consider nonmedical evidence, providing "[w]e are not required to articulate how we considered evidence from nonmedical sources using the requirements" applicable to opinion evidence. 20 C.F.R. § 404.1520c(d). In the absence of controlling precedent determining whether the updated Regulations displaced the "germane reasons" standard for rejecting non-medical evidence, courts have reached differing results. *Compare Wendy J.C. v. Saul*, 2020 U.S. Dist. LEXIS 194870, at *35 n.9 (D. Or. Oct. 21, 2020) (explaining that, for claims filed after the effective date of the 2017 Regulations that "the ALJ is no longer required to provide reasons germane to lay witnesses to reject their testimony"), *with Joseph M.R. v. Comm'r of Soc. Sec.*, 2019 U.S.

Dist. LEXIS 153831, at *33 (D. Or. Sept. 10, 2019) (holding that the 2017 Regulations "do[] not eliminate the need for the ALJ to articulate his consideration of lay-witness statements and his reasons for discounting those statements").

Here, the Court concludes that any error in the ALJ's rejection of the nonmedical source statements was harmless. "Where the ALJ gives clear and convincing reasons to reject a claimant's testimony, and where a lay witness' testimony is similar to the claimant's subjective complaints, the reasons given to reject the claimant's testimony are also germane reasons to reject the lay witness testimony." *Thomas v. Comm'r of Soc. Sec.*, 2022 U.S. Dist. LEXIS 18074, at *24 (D. Ariz. Feb. 1, 2022) (citing *Caleb H. v. Saul*, 2020 U.S. Dist. LEXIS 243198, at *20 (E.D. Wash. Nov. 18, 2020).

The nonmedical source evidence submitted by Plaintiff's mother and friend both mirror Plaintiff's own subjective symptom testimony. (AR 320-327, 404, 405-407). These statements parallel Plaintiff's subjective testimony regarding the effects of his chronic back pain, migraines, and PTSD. While both nonmedical source statements provide greater descriptive detail and increased symptom severity compared to Plaintiff's statements, the statements all provide similar descriptions of Plaintiff's limitations and abilities in functioning due to pain. (AR 320-327, 404, 405-407). As discussed above, the ALJ offered proper clear and convincing reasons for rejecting Plaintiff's subjective symptom testimony. Those reasons apply with equal measure to the nonmedical source statements of his mother and friend. Accordingly, any error by the ALJ in failing to articulate germane reasons for rejecting that evidence was harmless.

4.      **RFC**

Plaintiff argues the ALJ committed error by determining an RFC that was not

supported by substantial evidence. (Dkt. 19 at 16). Specifically, he argues the RFC was

not supported by substantial evidence because it lacked limitations for Plaintiff's

migraine headaches and PTSD.[5] (Dkt. 19 at 17-19).

A.      **Legal Standard**

Residual functional capacity (RFC) is "the most [a claimant] can still do despite

[his or her] limitations." 20 C.F.R. § 404.1545(a); *see also* 20 C.F.R. Part 404, Subpart P,

Appendix 2, § 200.00(c) (defining an RFC as the "maximum degree to which the

individual retains the capacity for sustained performance of the physical-mental

requirements of jobs"). The ALJ must consider all relevant evidence in the record and all

of a claimant's medically determinable impairments, whether severe or not, when

assessing a RFC. *See Carmickle*, 533 F.3d at 1164; *Robbins v. Soc. Sec. Admin.*, 466 F.3d

880, 883 (9th Cir. 2006); 20 C.F.R. § 404.1545(a)(2) and (3).

In determining the RFC, the role of the ALJ is to perform a careful examination of

the medical record to ascertain a claimant's disability status and ability to work. 20

C.F.R. § 404.1545(a)(3); *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("[I]t is

the responsibility of the ALJ, not the claimant's physician, to determine residual

---

[5] Plaintiff does not raise further limitations that the ALJ should have considered in
determining his RFC beyond mental limitations with time off-task and absenteeism due to his
migraines and PTSD, and therefore has waived any other arguments related to Plaintiff's RFC.
*Carmickle*, 533 F.3d at 1161, n.2 ("We do not address this finding because Carmickle failed to
argue this issue with any specificity in his briefing.")

functional capacity."). The ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations in the RFC. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008); *Rounds v. Comm'r SSA*, 807 F.3d 996, 1006 (9th Cir. 2015) ("[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC."). In addition to medical evidence, the ALJ must consider descriptions and observations of the claimant's limitations, including limitations resulting from pain. *Laborin v. Berryhill*, 867 F.3d 1151, 1153 (9th Cir. 2017) (cleaned up). Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the vocational expert. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001).

The RFC finding must be supported by substantial evidence in the record and the ALJ must explain their reasoning underlying the RFC. 42 U.S.C. § 405(b); 20 C.F.R. § 404.1520c. To that end, the RFC assessment must contain a thorough discussion and analysis of the objective medical and other evidence. *Laborin*, 867 F.3d at 1153. The Court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation." *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

**B.    Analysis**

Plaintiff argues the ALJ erred because the RFC failed to include mental limitations related to Plaintiff's migraines and PTSD, as well as time off-task and absenteeism. (Dkt. 19 at 20). Plaintiff does not expand on what type of mental limitations he believes should have been included in his RFC. Plaintiff points to medical evidence in the record about

Plaintiff trying multiple medications and increasing the dosage of his medications to treat migraines without much benefit. (Dkt. 20 at 17). However, the ALJ considered Plaintiff's migraines and provided a thorough discussion of the relevant medical evidence before finding Plaintiff's migraines to be non-severe. (AR 18-20).

Although the ALJ found Plaintiff's migraines and PTSD to be non-severe, even non-severe impairments must be considered when formulating the RFC. (AR 25); *See Robbins*, 466 F.3d at 883. But, an ALJ need not include limitations within the RFC that do not cause more than minimal limitations on Plaintiff's ability to work. *Medlock v. Colvin*, 2016 U.S. Dist. LEXIS 145692, at *12 (C.D. Cal. Oct. 20, 2016) ("Consideration of the limiting effects of all impairments does not necessarily require the inclusion of every impairment into the final RFC if the record indicates the non-severe impairment does not cause a significant limitation in the plaintiff's ability to work."). Only limitations supported by substantial evidence must be incorporated into the RFC. *Osenbrock*, 240 F.3d at 1163-65.

Here, the Court finds that the ALJ's RFC determination is rational and supported by substantial evidence in the record. The ALJ properly considered Plaintiff's migraines and PTSD in the decision. The ALJ discussed Plaintiff's migraine headaches when determining that it was a non-severe impairment causing only minimal effects on Plaintiff's ability to function. (AR 18-20). The ALJ evaluated the severity of Plaintiff's migraines in reviewing the medical evidence, Plaintiff's statements, and ultimately concluded that the evidence in the record did not support the frequency, intensity, and duration of migraines as reported by Plaintiff. (AR 18-20).

**MEMORANDUM DECISION AND ORDER - 27**

Specifically, the ALJ noted Plaintiff experienced migraines since childhood with increased frequency in 2008, but that Plaintiff was capable of working full-time for many years despite his alleged increased symptoms. (AR 20, 546). The ALJ explained that although Plaintiff alleged in July 2019 that his migraines were increasing in severity, in March 2020 and June 2020, Plaintiff reported that medication helped or reduced his headaches completely, most of the time. (AR 18, 457, 316, 334). In October 2020, Plaintiff reported his migraines had improved since retiring and he now had them maybe once a week. (AR 18, 824). The ALJ further mentioned that Plaintiff said in a January 2021 questionnaire that his medication helped his migraines 50% of the time, and during a consultive exam in February 2021, the provider stated after reviewing Plaintiff's records that medication had been helping significantly. (AR 19, 359, 936). Further, the ALJ acknowledged the medical evidence cited to by Plaintiff regarding Plaintiff's continued migraine symptoms in 2021, but ultimately determined that other evidence in the record did not support a finding that Plaintiff's migraines would cause any more than minimal limitations. (AR 19-20). Here, the Court finds the ALJ's conclusion that no additional limitations were necessary in Plaintiff's RFC to account for his migraines was supported by substantial evidence in the record.

Plaintiff also argues that the ALJ failed to consider the evidence of Plaintiff's PTSD when determining the RFC. (Dkt. 19 at 19). While Plaintiff restates his subjective symptom testimony, the third-party witnesses' statements, and points to medical evidence acknowledging Plaintiff's PTSD, he fails to specify what additional mental limitations should have been included in Plaintiff's RFC. (Dkt. 19 at 19-20). Furthermore,

**MEMORANDUM DECISION AND ORDER - 28**

substantial evidence supports the ALJ's finding that Plaintiff's PTSD causes no more than minimal limitations in Plaintiff's ability to perform basic mental work activities. The ALJ pointed to multiple records in support of this finding including Plaintiff's 2020 mental status exam where the diagnostic impression was PTSD, but the exam revealed he was oriented to person, place, time, and situation. (AR 20, 780-81). In July 2020, Plaintiff's PTSD screening score was 3, indicating a negative screen for PTSD in the past month. (AR 20, 852). In a July 2021 psychiatric exam, Plaintiff was able to demonstrate good judgment and reason, without hallucination or abnormal affect or behaviors. (AR 20, 1082). Overall, the ALJ found Plaintiff's PTSD reasonably well managed on medication, and noted Plaintiff has not required consistent care by a psychiatrist, psychologist, or other mental health provider. (AR 20). The Court finds that substantial evidence supports the ALJ's finding that Plaintiff's PTSD presents no more than minimal limitations in his ability to perform mental work activities. Therefore, the ALJ did not err in excluding non-exertional limitations in Plaintiff's RFC due to his PTSD.

In sum, the Court finds the ALJ's RFC determination is rational and supported by substantial evidence in the record. The ALJ properly considered Plaintiff's migraines and PTSD, thoroughly discussed the medical and non-medical evidence, and rationally concluded that Plaintiff's migraines and PTSD did not significantly limit his ability to work. (AR 18-23). Based on this, the Court finds that the ALJ rationally concluded that these impairments do not constitute functional limitations precluding Plaintiff from being able to work.

Although the Plaintiff has an alternative view of the record, the Court finds that

the ALJ reasonably considered all evidence in the record, including the records cited to in Plaintiff's brief, but ultimately found including additional limitations in the RFC to be unsupported by substantial evidence in the record. (AR 18-20, 29). It is the ALJ's responsibility to resolve conflicts in the medical evidence and ambiguities in the record. *Ford v. Saul*, 950 F.3d 1141, 1149 (9th Cir. 2020). The Court finds the ALJ's interpretation here to be rational and supported by substantial evidence. *Ryan v. Comm'r of Soc. Sec*. 528 F.3d 1194, 1198 (9th Cir. 2008) (where the evidence is "susceptible to more than one rational interpretation" the ALJ's reasonable evaluation of the record should be upheld).

## CONCLUSION

Based on the above, the Court finds the Commissioner's decision is supported by substantial evidence and reflects application of the correct legal standards. The decision is affirmed.

## <u>ORDER</u>

**NOW THEREFORE IT IS HEREBY ORDERED** that:

1)      The decision of the Commissioner of Social Security be **AFFIRMED**;

2)      Judgment be **ENTERED** consistent with the above in favor of Defendant.

DATED: March 15, 2024

Honorable Debora K. Grasham
United States Magistrate Judge